IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
KRISTIN E. C.,                    )
                                  )
          Plaintiff,              )
                                  )
     v.                           )     1:24CV500
                                  )
LELAND C. DUDEK,                  )
Acting Commissioner of Social     )
Security,                         )
                                  )
          Defendant.¹             )
```

**MEMORANDUM OPINION AND ORDER
OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Kristin E. C., brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of the final decision of Defendant, the Acting Commissioner of Social Security (the "Commissioner"), denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Disabled Widow's Benefits ("DWB"). (Docket Entry 2.) The Commissioner has filed the certified administrative record (Docket Entry 5 (cited herein as "Tr. __")), and both parties have submitted dispositive briefs in accordance with Rule 5 of the Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g) (Docket Entry 11 (Plaintiff's Brief); Docket Entry 14 (Commissioner's Memorandum);

---

[1] President Donald J. Trump appointed Leland C. Dudek as the Acting Commissioner of the Social Security Administration on February 17, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Leland C. Dudek should substitute for Martin J. O'Malley as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Docket Entry 15 (Plaintiff's Reply)). For the reasons that follow, the Court will enter judgment for the Commissioner.[2]

## I. PROCEDURAL HISTORY

Plaintiff applied for DIB (Tr. 164-71), alleging a disability onset date of March 31, 2020 (see Tr. 164, 167). Upon denial of that application initially (Tr. 84-93, 107-11) and on reconsideration (Tr. 94-102, 113-17), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 118-19). Following the death of her husband on December 21, 2022, Plaintiff added a claim for DWB. (See Tr. 42, 184-93.)[3] Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing. (Tr. 40-78.) The ALJ subsequently ruled that Plaintiff did not

---

[2] On consent of the parties, this "case [wa]s referred to [the undersigned] United States Magistrate Judge [] to conduct all proceedings . . ., to order the entry of judgment, and to conduct all post-judgment proceedings []herein." (Docket Entry 8 at 1.)

[3] "For [DWB], in addition to showing disability, a claimant must show that she is a widow who has attained the age of fifty and is unmarried (unless one of the exceptions in 20 C.F.R. § 404.335(e) [] appl[ies]) and that her disability began before the end of the prescribed period." Fraley v. Astrue, No. 2:10-cv-00762, 2011 WL 2681647, at *2 (S.D.W. Va. July 11, 2011) (unpublished) (citing 42 U.S.C. § 402(e) and 20 C.F.R. § 404.335). "The prescribed period [for DWB] ends with the month before the month in which the claimant attains age 60, or, if earlier, either 7 years after the worker's death or 7 years after the widow was last entitled to survivor's benefits, whichever is later." Fraley, 2011 WL 2681647, at *2 (citing 42 U.S.C. § 402(e)(4) and 20 C.F.R. § 404.335(c)(1)). In this case, Plaintiff's prescribed period began on December 21, 2022, the date her husband died (see Tr. 42, 187) and, thus, Plaintiff had to establish that her disability began on or before April 30, 2026, the last day of the month before the month in which Plaintiff will attain age 60, in order to obtain DWB. "The definition of disability for [DWB] is the same as for the standard disability case and the five-step sequential evaluation process is applicable to [DWB] cases." Lavender v. Colvin, No. 1:10CV903, 2014 WL 237980, at *2 n.4 (M.D.N.C. Jan. 22, 2014) (unpublished) (Webster, M.J.) (citing 20 C.F.R. §§ 404.1505(a), 404.1520(a)(2)), recommendation adopted, slip op. (M.D.N.C. Feb. 18, 2014) (Eagles, J.).

2

qualify as disabled under the Act. (Tr. 20-38.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-5, 161-63), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that decision, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff] meets the insured status requirements of the . . . Act through December 31, 2025.
>
> 2. It was previously found that [Plaintiff] is the unmarried widow of the deceased insured worker and has attained the age of 50. [Plaintiff] met the non-disability requirements for [DWB] . . . .
>
> 3. The prescribed period [for DWB] ends on April 30, 2026.
>
> 4. [Plaintiff] has not engaged in substantial gainful activity since March 31, 2020, the alleged onset date.
>
> 5. [Plaintiff] has the following severe impairments: lumbar degenerative disc disease and psoriatic arthritis.
>
> . . .
>
> 6. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> . . .
>
> 7. . . . [Plaintiff] has the residual functional capacity to perform medium work . . . except she could occasionally climb ladders, ropes, and scaffolds and frequently climb ramps and stairs.
>
> . . .
>
> 8. [Plaintiff] is capable of performing past relevant work as a Medical Assistant and Clinic Clerk. This work

3

Case 1:24-cv-00500-LPA   Document 16   Filed 03/05/25   Page 3 of 19

> does not require the performance of work precluded by [Plaintiff]'s residual functional capacity.
>
> . . .
>
> In addition to past relevant work, there are other jobs that exist in significant numbers in the national economy that [Plaintiff] can also perform, considering [her] age, education, work experience, transferable skills, and residual functional capacity.
>
> . . .
>
> 9. [Plaintiff] has not been under a disability, as defined in the . . . Act, from March 31, 2020, through the date of th[e ALJ's] decision.

(Tr. 25-33 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has not established entitlement to relief under the extremely limited review standard.

### A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by

4

substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and

5

was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)). "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent

6

that the claimant does not possess the residual functional capacity [('RFC')] to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[4] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]." Id. at 179.[5] Step four

---

[4] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

[5] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only

7

then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[6]

## B. Assignment of Error

Plaintiff's first and only assignment of error maintains that "[t]he RFC determination is not supported by substantial evidence because the ALJ failed to properly evaluate the opinion of [rheumatologist] Dr. [Robert J.] Kipnis." (Docket Entry 11 at 7 (bold font and block formatting omitted); see also Docket Entry 15

---

after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

[6] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

at 1-2.)  In particular, Plaintiff faults the ALJ for failing to "identify . . . and independently evaluate" Dr. Kipnis's opinion that "Plaintiff had 'achieved maximal response to therapy'" and "'continue[d] to have debilitating peripheral joint complaints and low back pain which prevent[ed] her from working, even in a sedentary position, on a regular basis.'"  (Docket Entry 11 at 9 (quoting Tr. 545).)  In Plaintiff's view, the ALJ's rationale for rejecting Dr. Kipnis's opinion, i.e., because he "'assessed [it] in connection with [Plaintiff]'s short and long-term disability claims'" (id. (quoting Tr. 30)), qualifies as "meaningless" (id.), because Dr. Kipnis's "medical opinion is about [Plaintiff's] exertional limitations, not whether she qualified under th[e SSA]'s metrics" (id. at 10).  According to Plaintiff, "[t]he ALJ is ordered by the [SSA]'s own regulations to determine if Dr. Kipnis' opinion is supported and consistent[, and] . . . should have [] determined that the opinion was persuasive and adopted Dr. Kipnis' less than sedentary limitations[, which] . . . would have eliminated Plaintiff's past relevant work . . ., likely resulting in a favorable determination."  (Id. at 11.)  Plaintiff's contentions miss the mark.

For benefits applications filed on or after March 27, 2017 (such as Plaintiff's (see Tr. 164-71, 184-93)), the SSA has enacted substantial revisions to the regulations governing the evaluation of opinion evidence, see Revisions to Rules Regarding the

9

Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017). Significantly, the new regulations narrowed the definition of "medical opinions" by removing "statements . . . that reflect <u>judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis</u>" from that definition, <u>compare</u> 20 C.F.R. § 404.1527(a)(1) (applicable to claims filed before Mar. 27, 2017) (defining "medical opinions" as "statements . . . that reflect <u>judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis</u>, what [the claimant] can still do despite impairment(s), and [the claimant's] physical and mental restrictions" (emphasis added)), <u>with</u> 20 C.F.R. § 404.1513(a)(2) (applicable to claims filed on or after Mar. 27, 2017) (defining "medical opinion" as "statement . . . about what [a claimant] can still do despite [his or her] impairment(s) and whether [the claimant] ha[s] one or more impairment-related limitations or restrictions in the [] abilities" to perform the physical, mental, or other "demands of work activities" or "to adapt to environmental conditions"), and reclassifying such judgments as "other medical evidence," 20 C.F.R. § 404.1513(a)(3) (defining "[o]ther medical evidence" as "evidence from a medical source that is not objective medical evidence or a medical opinion, including <u>judgments about the nature and severity of [a claimant's]</u>

10

<u>impairments, [his or her] medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis</u>" (emphasis added)).

Furthermore, the new regulations clarify the types of evidence deemed "inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled . . . under the Act." 20 C.F.R. § 404.1520b(c). Relevant to this case, "inherently neither valuable nor persuasive" evidence, <u>id.</u>, includes "[s]tatements on issues reserved to the Commissioner" which "would direct [the ALJ's] determination or decision that [a claimant is] . . . disabled . . . within the meaning of the Act," 20 C.F.R. § 404.1520b(c)(3), such as "[s]tatements that [a claimant is] or [is] not disabled, . . . able to work, or able to perform regular or continuing work," 20 C.F.R. § 404.1520b(c)(3)(i), as well as "[s]tatements about what [a claimant's RFC] is using [the SSA's] programmatic terms about the functional exertional levels in Part 404, Subpart P, Appendix 2, Rule 200.00 instead of descriptions about [the claimant's] functional abilities and limitations," 20 C.F.R. § 404.1520b(c)(3)(v). The new regulations do not require an ALJ to "provide <u>any</u> analysis about how [he or she] considered such

11

evidence in [the] determination or decision." 20 C.F.R. § 404.1520b(c) (emphasis added).[7]

On May 5, 2021, Dr. Kipnis addressed a letter "To Whom It May Concern" which contained, in pertinent part, the following statements:

> [Plaintiff] is currently under my medical care and may not return to [sic] at this time. Unfortunately, despite aggressive medical therapy (intermittent steroid injections, Stelara, leflunomide) she continues to have debilitating peripheral joint complaints and low back pain which prevent her from working, even in a sedentary position, on a regular basis. She should be considered for permanent disability as she is felt to have achieved maximal response to therapy.

(Tr. 545.)

The ALJ evaluated those statements by Dr. Kipnis, together with similar statements from other providers, as follows:

> The multiple statements from medical sources that [Plaintiff] is debilitated, not employable at this time, unable to work, should be considered for disability, or is prevented from working were assessed in connection

---

[7] Moreover, under the new regulations, ALJs need not assign an evidentiary weight to medical opinions or accord special deference to treating source opinions. See 20 C.F.R. § 404.1520c(a) (providing that ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . ., including those from [a claimant's] medical sources"). Instead, an ALJ must determine and "articulate in [the] . . . decision how persuasive [he or she] find[s] all of the medical opinions . . . in [a claimant's] case record." 20 C.F.R. § 404.1520c(b) (emphasis added). Additionally, the SSA deems supportability and consistency "the most important factors" and thus the ALJ must address those two factors in evaluating the persuasiveness of a medical opinion. 20 C.F.R. § 404.1520c(b)(2). "Supportability" means "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation." Revisions to Rules, 82 Fed. Reg. at 5853; see also 20 C.F.R. § 404.1520c(c)(1). "Consistency" denotes "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." Revisions to Rules, 82 Fed. Reg. at 5853; see also 20 C.F.R. § 404.1520c(c)(2).

12

> with [her] short- and long-term disability claims. ([Tr. 281-86 (11/19/20 long-term disability approval letter finding Plaintiff "unable to perform the[] duties [of her Clinic Clerk job]" (Tr. 281)), 545 (Dr. Kipnis's 5/5/21 letter), 668 (statement from Dr. Gordon Lam on 11/10/22 that Plaintiff's "various medical conditions . . . requiring aggressive immunomodulatory therapies . . . prevent her from working, even in a sedentary position on a regular basis," and that "[h]er consideration for permanent disability should be maintained"), 697-98 (2/23/23 statement from Dr. Lam deeming Plaintiff "debilitated," "not employable," and "unable to work").])[] Moreover, whether an individual is disabled or unable to work is a finding that is reserved to the Commissioner. The definition of disability involves legal, medical and vocational issues and physicians, treating or otherwise, do not always consider these factors.

(Tr. 30 (second internal parenthetical citation omitted).) For the reasons discussed in more detail below, because Dr. Kipnis's statements do not qualify as "medical opinions" under Section 404.1513(a)(2), the ALJ did not err by failing to assess the persuasiveness of those statements.

To begin, Dr. Kipnis's statements that Plaintiff continued to experience "debilitating peripheral joint complaints and low back pain" despite "aggressive medical therapy (intermittent steroid injections, Stelara, leflunomide)," and that she had "achieved maximal response to therapy" (Tr. 545), clearly reflect Dr. Kipnis's "judgments about the nature and severity of [Plaintiff's] impairments, . . . clinical findings, [and] treatment prescribed with response" and thus qualify as "other medical evidence" under 20 C.F.R. § 404.1513(a)(3) (emphasis added), rather than "medical

13

opinions" under Section 404.1513(a)(2). See Coles v. Kijakazi, No. 1:22CV199, 2023 WL 2898680, at *12 (N.D. Fla. Mar. 10, 2023) (unpublished) ("Statements by a medical source reflecting judgments about a claimant's diagnosis and prognosis are not considered medical opinions because they do not necessarily provide perspectives about the claimant's functional abilities and limitations."), recommendation adopted, 2023 WL 2895732 (N.D. Fla. Apr. 11, 2023) (unpublished), aff'd sub nom. Coles v. Commissioner, Soc. Sec. Admin., No. 23-11944, 2024 WL 3311318 (11th Cir. July 5, 2024) (unpublished).

Correspondingly, Dr. Kipnis's statement that Plaintiff's symptoms "prevent her from working, even in a sedentary position, on a regular basis" (Tr. 545 (emphasis added)) clearly qualifies as a "[s]tatement[] about what [Plaintiff's RFC] is using [the SSA's] programmatic terms about the functional exertional levels in Part 404, Subpart P, Appendix 2, Rule 200.00 instead of [a] description[] about [Plaintiff's] functional abilities and limitations," 20 C.F.R. § 404.1520b(c)(3)(v) (emphasis added), and Dr. Kipnis's recommendation that "[Plaintiff] should be considered for permanent disability" (Tr. 545 (emphasis added)) constitutes a "[s]tatement[] that [Plaintiff is] or [is] not disabled, . . . able to work, or able to perform regular or continuing work," 20 C.F.R. § 404.1520b(c)(3)(i). The regulations deem such "[s]tatements on issues reserved to the Commissioner," 20 C.F.R. § 404.1520b(c)(3),

14

"inherently neither valuable nor persuasive to the issue of whether [Plaintiff is] disabled . . . under the Act," 20 C.F.R. § 404.1520b(c), and thus did not require the ALJ to "provide any analysis about how [she] considered such evidence in [the] determination or decision," 20 C.F.R. § 404.1520b(c) (emphasis added).

Another district court recently evaluated an analogous set of statements from a treating provider and found that those statements did not constitute "medical opinions" under the new regulations, providing the following, persuasive rationale:

> [Dr. Bass's] Medical Statement provides in relevant part as follows:
>
>> [The plaintiff] is currently under my long-term neurological care and management for highly-active relapsing-remittingg [sic] multiple sclerosis. Due to this progressive, inflammatory, neurodegenerative disease, the [plaintiff] is suffering from double vision, dizziness, imbalance, diffuse shooting pain, numbness in the extremities, fatigue, and trouble with over all mobility. The [plaintiff] has started treatment with Gilenya in an attempt to reduce further clinical relapse, reduce disease activity on MRI, and slow down disability progression. However, unfortunately, due to the [plaintiff]'s current neurological deficit and damage, she is medically considered totally physically disabled and UNABLE to work at this point.
>
> . . .
>
> [The plaintiff] argues that Dr. Bass's statement constitutes a "medical opinion" that had to be analyzed for consistency and supportability, and the ALJ's failure to do so was reversible error. The [c]ourt disagrees.

15

> . . .
>
> [T]he ALJ did not explain how he considered the supportability and consistency factors for Dr. Bass's opinion, instead stating summarily that [the ALJ] considered the opinion "unpersuasive" because "the determination whether a claimant is disabled and unable to work are legal issues reserved to the Commissioner." . . . The ALJ did not err in his treatment of Dr. Bass's statement because it is not a medical opinion. Section [404.]1520b is clear that [S]ection [404.]1520c does not require the ALJ to provide any analysis about how statements that a claimant is disabled or unable to work were considered. Without these statements, Dr. Bass's statement is merely a statement of symptoms ("the [plaintiff] is suffering from double vision, dizziness, imbalance, diffuse shooting pain, numbness in the extremities, fatigue, and trouble with over all mobility") and treatment, but does not contain "an [acceptable] expression of judgment regarding a claimant's capabilities and restrictions." [Winston v. Berryhill, 755 F. App'x 395, 403 (5th Cir. 2018).] Without this latter portion, the statement is not a "medical opinion" . . . . Dr. Bass's statement was therefore not required to be evaluated under the factors listed in 20 C.F.R. § [404.]1520c, including supportability and consistency.
>
> [The plaintiff] contends that the ALJ was nevertheless required to evaluate the supportability and consistency of Dr. Bass's statement that [the plaintiff] suffers from double vision, dizziness, imbalance, diffuse shooting pain, numbness, fatigue, and limited mobility due to her multiple sclerosis under § 404.1520c. But § 404.1520c applies only to medical opinions and the Commissioner rightly argues that this portion of the statement would be considered "other medical evidence[]" [under § 404.1513(a)(3)].

Myers v. Saul, No. 20CV445, 2021 WL 4025993, at *4-7 (W.D. Tex. Sept. 3, 2021) (unpublished).

In Plaintiff's Reply, she places great emphasis on Dr. Kipnis's opinion that Plaintiff's symptoms "prevent her from

16

working, *even in a sedentary position*, on a regular basis" (Docket Entry 15 at 2 (quoting Tr. 545) (emphasis added by Plaintiff)), and argues (without citation to authority) that "Dr. Kipnis' letter absolutely contains an opinion about Plaintiff's functional limitations; he believes Plaintiff cannot perform even sedentary work" (id. (citing Tr. 545)). According to Plaintiff, "[a]ny argument to the contrary is not logical or truthful and must be rejected by this Court." (Id.)

Contrary to Plaintiff's (unsupported) assertion, courts that have considered medical source statements that a claimant could not perform even sedentary work have consistently held that such statements do not constitute "medical opinions" under the new regulations (and even under the prior definition of "medical opinion" applicable to claims filed before March 27, 2017), because they amount to statements that a claimant cannot work, rather than opinions setting forth specific functional limitations. See, e.g., Mitchell v. Kijakazi, No. 23CV60321, 2023 WL 6907806, at *4 (S.D. Fla. Oct. 19, 2023) (unpublished) ("[The treating physician's] statement regarding [the p]laintiff's inability to perform even sedentary work either does not qualify as a medical opinion, or at the very least, is a statement on an issue reserved to the Commissioner. . . . [B]y opining that [the p]laintiff could not perform work even at the sedentary level (the lowest exertional level), [the physician] effectively opined that [the p]laintiff is

17

unable to work. Moreover, [the physician] used a programmatic term regarding [the p]laintiff's functional exertional level rather than describing any of [the p]laintiff's functional abilities or limitations."); Hicks v. Commissioner of Soc. Sec. Admin., No. 3:21CV113, 2022 WL 3282273, at *13 (N.D. Ohio May 25, 2022) (unpublished) (deeming ALJ's finding that "doctor's statement that the claimant [wa]s . . . unable to perform even sedentary work" did not qualify as medical opinion "consistent with the governing regulations") (objections to recommendation pending); Tatum v. Commissioner of Soc. Sec., No. 1:19CV1263, 2020 WL 7640588, at *13 (E.D. Cal. Dec. 23, 2020) (unpublished) (finding no error in ALJ's rejection of treating physicians' statements "that [the p]laintiff could not sustain even sedentary work activity," because such statements "are not medical opinions, but are opinions on issues reserved for the Commissioner"); Hounchell v. Commissioner of Soc. Sec., No. 1:15CV660, 2016 WL 8667829, at *8 (S.D. Ohio Oct. 7, 2016) (unpublished) (holding that psychiatrist's statement that the plaintiff "[wa]s unable to perform even sedentary work" constituted not a "medical opinion[,] . . . but instead [an] issue[] reserved to the Commissioner"), recommendation adopted, 2016 WL 6395819 (S.D. Ohio Oct. 28, 2106 (unpublished); Phillips v. Colvin, No. 1:13CV3321, 2014 WL 6455395, at *15 (D.S.C. Nov. 13, 2014) (unpublished) ("[The physician]'s opinions that [the p]laintiff's complaints were severe enough to preclude even sedentary work on a

18

full-time basis . . . addressed an issue reserved to the Commissioner because, if accepted, they would be dispositive of the claim."); Koerner v. Astrue, No. 1:09CV111, 2010 WL 3221912, at *6 (W.D. Ky. June 3, 2010) (unpublished) (deeming physician's statement that "even sedentary work would cause [the plaintiff] to have significant pain and discomfort . . . not [a] genuine medical opinion[] . . . entitled to any special significance" (brackets and internal quotation marks omitted)), recommendation adopted, 2010 WL 3221910 (W.D. Ky. Aug. 13, 2010) (unpublished).

In light of the foregoing analysis, Plaintiff has not shown that the ALJ erred by failing to evaluate the persuasiveness of Dr. Kipnis's statements in his letter dated May 5, 2021, and, thus, Plaintiff's sole assignment of error falls short.

### III. CONCLUSION

Plaintiff has not established an error warranting remand.

**IT IS THEREFORE ORDERED** that the Commissioner's decision finding no disability is **AFFIRMED**, and that this action is **DISMISSED** with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

March 5, 2025